1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2024

SEAN F. McAVOY, CLERK

4

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

LEILANI B.,[1]

No.    1:23-cv-3206-EFS

7

                            Plaintiff,

8

            v.

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR AWARD OF BENEFITS**

9

MARTIN O'MALLEY, Commissioner of Social Security,

10

                            Defendant.

11

12

13

14

15

16

17

18

        Due to physical and mental impairments, Plaintiff Leilani B. claims she is unable to work fulltime and applied for supplemental security income benefits. She appeals again—for the third time—the Administrative Law Judge's (ALJ) denial of benefits on the grounds that the ALJ erred at step two, failed to properly evaluate the medical opinions and Plaintiff's symptom reports, and failed to properly assess Plaintiff's residual functional capacity. As is explained below, the ALJ again erred:

19

20

21

22

23

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

1    at step two and when analyzing the medical opinions. This matter is remanded for

2    an award of benefits.

3                            **I.    Background**

4         At the age of 44, Plaintiff applied for benefits under Title 16, claiming

5    disability beginning on March 24, 2016, based on fibromyalgia, disc replacement

6    surgery, panic attacks, anxiety, post-traumatic stress disorder (PTSD), and chronic

7    pain in her spine, legs, and arms.[2] After the agency denied benefits,[3] an

8    administrative hearing was held before ALJ Mark Kim in 2018.[4] At the hearing,

9    Plaintiff testified that she has a ninth-grade education, experienced sexual abuse

10   and neglect, was in a car accident years prior that caused back pain, and was

11   divorced.[5] She stated that she lived with her adult son, gets anxious around other

12   people, received mental health treatment, and took medication for her pain and

13   fibromyalgia, although the medication did not sufficiently relieve her pain to allow

---

[2] AR 179–90. At a later date, Plaintiff filed a Title 2 claim; however, at the August

2023 hearing, Plaintiff withdrew the Title 2 claim. AR 939–68, 1636. In addition,

Plaintiff filed a duplicative Title 16 claim in 2021, which was consolidated with the

initial claim. AR 1597.

[3] AR 73–95, 99–114.

[4] AR 35–65.

[5] *See, e.g.*, AR 41–51, 503, 1084–85, 1435, 1544.

her to work.[6] She testified that gets numbness in her arms and in her legs if she stands or sits too long (about 15–60 minutes).[7] She gets about 3–4 hours of sleep a night, lays down most of the day, and has difficulty focusing and remembering.[8]

A month after the hearing, the ALJ denied Plaintiff's claim.[9] Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review. Plaintiff then filed a lawsuit in district court.[10] Magistrate Judge Mary Dimke granted summary judgment in Plaintiff's favor and remanded the matter back to the Commissioner for further proceedings.[11]

On remand, a second administrative hearing was held by telephone in May 2021 during which Plaintiff, a medical expert, and a vocational expert testified.[12] Plaintiff testified that she lives with her son, his wife, a grandson, and an in-law.[13] She said that she is unable to reach above her shoulders and has pain daily in her

---

[6] AR 41–48.

[7] AR 48.

[8] AR 50–53.

[9] AR 12–34.

[10] AR 1–6, 780–96. *See* E.D. Wash. no. 1:19-cv-3189-MKD.

[11] AR 797–831.

[12] AR 729–79. Before the second hearing, Plaintiff filed additional applications for benefits; these claims were consolidated with her initial application. AR 696.

[13] AR 740–41.

DISPOSITIVE ORDER - 3

1   low back, experiences both shooting pains and numbness in her legs, and

2   experiences numbness in her hands and arms.[14] She spends the majority of the

3   days laying down or reclining; and she has problems sleeping and this impacts her

4   ability to function the next day. She testified that she forgets things and suffers

5   from migraines, which require her to stay in a dark and quiet room, about once a

6   week.[15]

7        Later that month, ALJ M.J. Adams issued a decision denying Plaintiff's

8   claim.[16] Plaintiff appealed the denial to district court.[17] The parties agreed the ALJ

9   erred, and the district court remanded the matter back to the Commissioner.[18]

10       In August 2023, a third administrative hearing was held before ALJ C.

11  Howard Prinsloo by telephone, at which Plaintiff and a vocational expert

12  testified.[19] Plaintiff testified to problems with her legs, including numbness,

13  swelling, and pooling of blood.[20] She stated that she had been struggling with low

---

[14] AR 742–44.

[15] AR 745–49.

[16] AR 693–728.

[17] AR 1709–13. *See* E.D. Wash. no. 1:21-cv-3102-MKD.

[18] AR 1714–19, 1738–40.

[19] AR 1631–62.

[20] AR 1639–40, 1644.

oxygen levels and she was put on oxygen the month prior.[21] She relayed that she has been using a cane when she walks because she gets dizzy and winded.[22] She testified that she is unable to fully close her hands, as she lacks full strength; and that she stopped driving about two years ago because she gets dizzy and can have panic attacks when she is driving.[23] She testified that she is no longer on antidepressants due to changes in her mental-health care providers, she experiences forgetfulness, and her anxiety makes it difficult to leave the house and be social.[24]

The ALJ issued a decision denying benefits.[25] The ALJ found Plaintiff's alleged symptoms were inconsistent with the medical evidence and other evidence.[26] The ALJ considered the lay statements from Plaintiff's son.[27] As to the physical-health medical opinions, the ALJ:

---

[21] AR 1641–42, 1648.

[22] AR 1642.

[23] AR 1643–44.

[24] AR 1645–46.

[25] AR 1594–1630. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[26] AR 1603–09.

[27] AR 1616.

- found persuasive the reviewing opinions of G. Bugg, MD; JD Fitterer, MD; Tim Schoefield, MD; Christine Harmond, MD; Robert Hander, MD; and Erin Madden, MD.
- gave partial weight to the consultative opinion of William Drenguis, MD.
- gave no weight to the statements by Alex Stone, PA.
- gave some weight to the treating opinions of Roger Wagner, MD, and Beth McManis, ARNP.
- found the treating opinion of Huilin Sun, ARNP, not persuasive.[28]

As to the mental-health medical opinions, the ALJ:

- did not assign weight to the reviewing opinions of Renee Eisenhauer, PhD; Jan Lewis, PhD; Andrew Forsyth, PhD; and Steven Haney, MD.
- gave partial weight to the evaluating opinion of Alexander Patterson, PsyD; and the reviewing opinion of Jay Toews, EdD.
- gave little weight to the evaluating opinion of Thomas Genthe, PhD.

---

[28] AR 1610–11. The ALJ appears to have used the standards in 20 C.F.R. § 416.927 for medical opinions issued prior to March 27, 2017, and the standards in 20 C.F.R. § 416.920c for medical opinions issued after that date, even though Plaintiff filed her initial Title 16 claim in 2016.

- gave no weight to the reviewing opinions of Rita Flanagan, PhD;
  Preston Davis, PsyD; Luci Carstens, PhD, PS; and Renee Eisenhauer,
  PhD.

- gave no weight to the evaluating opinions of R.A. Cline, PsyD;
  Tasmyn Bowes, PsyD; and JK Zhang, PsyD.

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity
  since March 16, 2016, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe
  impairments: migraine headaches, degenerative disc disease of the
  spine, fibromyalgia, obesity, depressive disorder, anxiety disorder,
  personality disorder, PTSD, and substance use disorder.

- Step three: Plaintiff did not have an impairment or combination of
  impairments that met or medically equaled the severity of one of the
  listed impairments.

- RFC: Plaintiff had the RFC to perform light work except she is limited
  to:

  > no climbing of ladders, ropes, or scaffolds, but can
  > occasionally climb ramps and stairs, balance, stoop, kneel,
  > crouch, or crawl. She must avoid exposure to vibration or
  > concentrated exposure to hazards. She can understand,
  > remember, and carry out simple instructions and exercising
  > [sic] simple workplace judgment with occasional changes in
  > the work environment. The claimant is capable of occasional
  > coworker interaction with occasional or less interaction or
  > contact with the public.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work
  history, Plaintiff could perform work that exists in significant
  numbers in the national economy, such as electronics accessory
  assembler, marker, and housekeeping cleaner.[29]

Plaintiff timely requested review of the ALJ's decision.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[30] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31]

---

[29] AR 1597–1618.

[30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[31] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that

1

### III.    Analysis

2         Plaintiff argues the ALJ erred by not properly assessing all medically

3    determinable and severe disorders, the medical opinions, and her symptom

4    testimony. The Commissioner argues the ALJ's nondisability finding is supported

5    by substantial evidence. As is explained below, the ALJ erred at step two and when

6    evaluating the mental-health medical opinions. The ALJ's continued errors support

7    a remand for payment of benefits, after crediting the mental-health opinions that

8    were not properly evaluated.

9    ### A.    Step Two (Severe Impairment): Plaintiff establishes consequential error.

10        Plaintiff argues that the ALJ erred at step two by not properly assessing all

11    medically determinable and severe disorders, namely conditions affecting her legs

12    (venous insufficiency, edema, and statis dermatitis) and COPD. The Commissioner

13    argues that the ALJ reasonably identified the severe impairments and that even if

14    Plaintiff establishes step-two error, Plaintiff cannot show resulting harm.

15        At step two, the ALJ determines whether the claimant suffers from a

16    "severe" impairment, i.e., one that significantly limits her physical or mental

17

18    _____

19    supports and the evidence that detracts from the Commissioner's conclusion," not

20    simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

21    143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

22    not indicate that such evidence was not considered[.]").

23

ability to do basic work activities.[32] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe.[33] As to the first prong, neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[34] Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," and objective medical evidence means "signs, laboratory findings, or both."[35] As to the second prong, the severity determination is discussed in terms of what is *not* severe.[36] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a

---

[32] 20 C.F.R. § 416.920(c).

[33] *Id.* § 416.920(a)(4)(ii).

[34] *Id.* § 416.921.

[35] *Id.* §§ 416.921, 416.902(k). Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." *Id.* § 416.902(l). *See also* SSR 85-28 at *4 ("At the second step of sequential evaluation … medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[36] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work."[37] Because step two is simply to screen out

weak claims,[38] "[g]reat care should be exercised in applying the not severe

impairment concept."[39] Moreover, step two "is not meant to identify the

impairments that should be taken into account when determining the RFC" as step

two is meant *only* to screen out weak claims, whereas the crafted RFC must take

into account all impairments, both severe and non-severe.[40]

1.    Lower leg impairments

Plaintiff argues the ALJ erred by failing to find that Plaintiff's venous

insufficiency, edema, and stasis dermatitis constituted a severe impairment. In

response, the Commissioner argues that substantial evidence supports the ALJ's

decision not to find that Plaintiff's leg swelling was a severe impairment and,

regardless, that the swelling does not require any further accommodation beyond

the RFC's limitation to light work with no climbing of ladders, ropes, or scaffolds,

and only occasional climbing of ramps and stairs, balancing, stooping, kneeling,

crouching, or crawling.

---

[37] *See* SSR 85-28 at *3.

[38] *Smolen*, 80 F.3d at 1290.

[39] SSR 85-28 at *4.

[40] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

The ALJ did not mention Plaintiff's lower leg impairments of venous insufficiency, edema, or statis dermatitis in his step-two analysis, mentioning only:

> [o]ther impairments are mentioned in the record from time to time, such as sleep apnea, but they did not cause significant limitations in functioning, or did not last for a continuous period of 12 months. Any such impairment is not severe. However, any non-severe impairment is taken into account in assessing the claimant's residual functional capacity.[41]

Instead, the ALJ mentioned Plaintiff's leg swelling later in the five-step sequential analysis. The ALJ's references to Plaintiff's lower leg conditions reflect that the ALJ considered them to effect Plaintiff only mildly and sporadically:

- "For instance, although she occasionally appeared in mild pain, demonstrated limping gait, and exhibited lower extremity swelling, weakness, and sensation loss, most records show largely benign physical presentation."[42]

- "At times, she had non-pitting edema in her lower leg bilaterally with tenderness."[43]

---

[41] AR 1600.

[42] AR 1606.

[43] AR 1606.

- "[E]ven with allegations of leg swelling for the last year or so, the claimant asserted need for a cane with frequent observed falls, but did not bring her cane with her to all medical appointments."[44]

Yet, a fair and full review of the medical record reflects that the ALJ's failure to find a lower leg severe impairment is not supported by substantial evidence. The medical record reflects that Plaintiff began reporting problems with leg swelling in August 20, 2015. Although no edema was observed, the treating provider referred Plaintiff for a vascular evaluation.[45] Thereafter, amidst medical records noting normal gait and leg strength and no edema, other medical records reflect abnormal signs concerning Plaintiff's lower extremities:

- December 15, 2016: observed with decreased sensation to pinprick in her legs, walking with a limp and shuffling gait.[46]

- May 31, 2017: observed with +2 left pedal edema and +1 right pedal edema. "Encouraged pt. to elevate feet and wear compression stockings. Encouraged pt. to exercise such as walking or water

---

[44] AR 1606.

[45] AR 343. Plaintiff did not have the vascular ultrasound until 2023. AR 2213–15, 2342.

[46] AR 465.

aerobics/walking. If this does not help, pt given a Rx for Lasix. Pt. to use the medication x 3 days."[47]

- November 16, 2017: observed with no edema or significant varicosities but gait affected by left leg limp, laxity of Valgus stress left knee, and positive McMurray's left knee, and seemed to be in mild pain.[48]

- January 24, 2019: observed with an antalgic gait and mild pain.[49]

- March 19, 2019: no edema or significant varicosities but antalgic gait and seems to be in mild pain and recommended use of a single point cane due to left lower leg weakness.[50]

- June 13, 2019: observed with grade 2 edema of the left leg extending above the ankle, and 2+ pitting edema of the right ankle extending above the ankle.[51]

---

[47] AR 611–12.

[48] AR 650; *see also* AR 624–47, 1149–1200 (left leg limp and mild pain continuing through October 2018).

[49] AR 1123–30.

[50] AR 1109; *see also* AR 1387–1407 (observed with antalgic gait in April and May 2019).

[51] AR 1377.

- August 9, 2019: observed with antalgic gait.[52]

- February 23, 2021: observed to be walking slowly.[53]

- March 16, 2021: observed with bilateral edema in the lower extremities.[54]

- June 14, 2021: observed with 1+ pitting edema, swelling, and varicosities in bilateral lower extremities. Recommended prescription for Lasix and compression stockings.[55]

- August 23, 2021: observed with trace bilateral extremity edema.[56]

- August 12, 2022: observed with an unsteady gait, non-pitting bilateral edema, and stasis ulcer (bilateral lower legs, red and swollen, whitish oozing at left calf). Recommended compression of lower legs and elevation for at least one hour a day and noted concern about potential heart failure.[57]

---

[52] AR 1356; *see also* AR 1327–53 (observed with slightly antalgic gait in August 2019, September 2019, and October 2019).

[53] AR 1430–31.

[54] AR 1577.

[55] AR 2042–44.

[56] AR 2021.

[57] AR 2520–24.

- August 19, 2022: observed with an unsteady gait, non-pitting bilateral edema, and statis ulcer of the bilateral lower legs, although the redness and swelling were less severe than the week prior.[58]

- October 21, 2022: observed with statis dermatitis of bilateral lower legs, along with swelling of bilateral lower extremities.[59]

- March 17, 2023: observed with non-pitting bilateral edema; ultrasound of lower extremities ordered.[60]

- April 19, 2023: ultrasound reveals superficial venous reflux/valvular incompetence of the bilateral lower extremities but no deep venous valvular insufficiency.[61]

- June 2023: "patient is significantly symptomatic due to lymphedema with skin weeping, erythema and taut edema causing pain and decreased mobility. . . . Once leg swelling is controlled and reduced with the lymphedema treatment, she can be fit for compression stockings to aid in lifetime management of chronic edema. She could

---

[58] AR 2512.

[59] AR 2490–91.

[60] AR 2412–14.

[61] AR 2342.

1

2

also benefit from lymphedema pumps for long-term management of

significant leg swelling . . . ."[62]

3    While an ALJ need not address every piece of evidence, an ALJ "may not

4  ignore significant probative evidence that bears on the disability analysis."[63] By

5  focusing on the medical records that reflected normal gait, lower leg strength, and

6  no edema, the ALJ erred in his step-two analysis. The objective medical evidence

7  establishes that Plaintiff suffers abnormalities from venous insufficiency, edema,

8  and stasis dermatitis, including observed leg swelling, redness, and oozing in her

9  bilateral lower extremities. The Commissioner argues that these impairments did

10 not severely limit Plaintiff as it was merely recommended that Plaintiff wear

11 compression socks and raise her feet for one hour a day—and such restrictions do

12 not constitute more than a minimal effect on Plaintiff's ability to work. However,

13 Plaintiff's treating provider, when considering Plaintiff's symptoms including

14 bilateral leg swelling, opined that Plaintiff was unable to perform even sedentary

15 work and would miss 4 or more days per month.[64] Moreover, the medical records

16 reflect that use of a cane was recommended both in 2019 and 2022.[65]

17

18 [62] AR 2214.

19 [63] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

20 [64] AR 2209–11.

21 [65] AR 1109 (Mar. 19, 2019: "PT had recommended use of single point cane due to

22 LLE weakness, which I signed an order for in the meantime."); AR 2509 (Aug. 19,

23

The ALJ's failure to discuss Plaintiff's lower leg impairments fairly and fully, including a complete failure to mention stasis dermatitis and varicosities, consequentially impacted the ALJ's analysis. The ALJ failed to discuss the impact these impairments have on Plaintiff's functioning, failed to discuss whether they provide support for the more limiting medical opinions, and failed to consider the interplay between these impairments and Plaintiff's other impairments. These failures effected the nondisability analysis, including the RFC and possibly the ALJ's listings and Grid analysis.[66]

2.    COPD

Plaintiff argues the ALJ erred by finding that her COPD was not a severe impairment. In regard to COPD, the ALJ found the medical evidence insufficient to

_____

2022: "script for a cane sent, use as needed for balance during ambulation"). *See also* AR 1238 (July 14, 2020: "cane").

[66] *See* 20 C.F.R. § App. 2, Subpt. P, Pt. 404, § 201.00(g), Medical-Vocational Guidelines. SSR  96-9p ("'Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s),' direct a decision of 'disabled' for individuals age 50 and over who are limited to a full range of sedentary work, unless the individual has transferable skills or education that provides for direct entry into skilled sedentary work, the impact of an RFC for less than the full range of sedentary work in such individuals is less critical.").

1    establish that Plaintiff suffered from COPD for longer than 12 months. The ALJ's

2    finding is not supported by substantial evidence.

3          In additional to Plaintiff's breathing issues in August 2021, which were

4    noted by the ALJ,[67] the medical record reflects that Plaintiff began having

5    breathing issues in 2017—and such continued through 2023:

6          • June 29, 2017: "Severe with the lowest saturation of 65% and 86 min

7            under 90% saturation. Baseline oxygen saturation was abnormal.

8            Suggesting overlap syndrome.[68]

9          • July 27, 2017: Low oxygen saturation at 89%.[69]

10         • August 12, 2022: observed with inspiratory wheeze in both lung

11           fields.[70]

12         • October 21, 2022: low oxygen saturation at 90%.[71]

13   Although a treatment note in March 2023 states that Plaintiff's COPD is under

14   control,[72] the next month her oxygen saturation was at 90%.[73] In June 2023, she

15

16   _____

16   [67] AR 2020.

17   [68] AR 1081.

18   [69] AR 479.

19   [70] AR 2520–23.

20   [71] AR 2490.

21   [72] AR 2411.

22   [73] AR 2293.

23

was observed with inspiratory and expiratory wheezing in all lung fields and a cough with deep breathing; the provider's assessment was that COPD was a "chronic condition, treatment not at goal" and "oxygen level suboptimal, with elevated heart rate."[74]

The ALJ's finding that COPD did not last for a continuous, twelve-month period is erroneous.[75] Moreover, the ALJ failed to meaningfully discuss whether suboptimal oxygen levels or wheezing would significantly limit Plaintiff's ability to stand and/or walk up to six hours of the workday with no RFC respiratory restrictions.

### 3.    Consequential Errors

Although step-two errors are often harmless,[76] the ALJ's step-two errors were not harmless. The ALJ's crafted light-work RFC did not sufficiently account for Plaintiff's difficulties breathing or swelling in her lower extremities.

**B.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ did not properly assess the medical opinions, including opinions by ARNP McManis, ARNP Sun, Dr. Drenguis, Dr. Bowes,

---

[74] AR 2244.

[75] 20 C.F.R. §§ 416.905(a), 416.909 (requiring the impairment to have lasted or be expected to last for a continuous period of not less than 12 months).

[76] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

1    Dr. Genthe, Dr. Eisenhauer, Dr. Zhang, Dr. Cline, and Dr. Carstens; and failed to

2    evaluate the reviewing opinions by Dr. Lewis, Dr. Forsyth, Dr. Haney, and

3    Dr. Eisenhauer. The Commissioner argues that substantial evidence supports the

4    ALJ's evaluation of the medical opinions.

5        Because of the ALJ's step-two errors pertaining to Plaintiff's physical

6    impairments, these errors necessarily impacted the ALJ's assessment of the

7    medical opinions regarding Plaintiff's exertional abilities. The Court therefore

8    focuses its review on the ALJ's evaluation of the mental-health opinions.

9        1.    <u>Standard</u>

10        When Plaintiff filed her initial disability application, a former version of the

11    social-security regulations regarding assessment of medical-opinion evidence

12    applied.[77] The former regulations required that medical opinions be assessed based

13    on the nature of the medical relationship the claimant had with the medical source.

14    When a treating physician's or evaluating physician's opinion is not contradicted

15    by another physician's opinion, it can be rejected only for "clear and convincing"

16    reasons, and when it is contradicted, it can be rejected for "specific and legitimate

17    reasons" supported by substantial evidence.[78] A reviewing physician's opinion can

18    be rejected for specific and legitimate reasons supported by substantial evidence,

19

20

21    _____

    [77] 20 C.F.R. §416.927.

22

    [78] *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

23

1  and the opinion of an "other" medical source can be rejected for specific and

2  germane reasons supported by substantial evidence.[79]

3    2.    Reviewing opinions by State agency psychological consultants

4    The ALJ did not assign weight to four mental-health opinions by State

5  agency psychological consultants, Dr. Lewis, Dr. Eisenhauer, Dr. Forsyth, and

6  Dr. Haney. These medical sources reviewed the record available to them in

7  December 2019, June 2020, March 2022, and June 2022, respectively. The ALJ

8  recognized that each medical source "generally limited the claimant to simple work

9  with occasional interaction with the public and coworkers."[80] However, contrary to

10  the then controlling regulation, the ALJ did not articulate what weight he gave

11  these reviewing opinions.[81] This was error.

12    The Commissioner argues that by limiting Plaintiff to "simple instructions"

13  and "simple workplace judgment with occasional changes in the work environment"

14  with "occasional coworker interaction with occasional or less interaction or contact

15  with the public" it is clear that the ALJ found these opinions supported by and

16

17  [79] *Id.*; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

18  [80] AR 1611.

19  [81] 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical

20  opinion we receive. Unless we give a treating source's medical opinion controlling

21  weight under paragraph (c)(2) of this section, we consider all of the following

22  factors in deciding the weight we give to any medical opinion.").

23

consistent with the record.[82] However, it is the ALJ's responsibility to explain how he considered the relevant factors in deciding what weight to give to the medical opinions. Not only did the ALJ fail to assign a weight to these opinions but the ALJ failed to consider the relevant factors, including whether these reviewing opinions were supported or consistent with the objective medical record and other opinions.[83]

Furthermore, the ALJ did not compare Dr. Eisenhauer's June 2020 reviewing opinion against her more limiting opinion issued later in November 2021.[84] In her June 2020 opinion for Disability Determination reconsideration purposes, Dr. Eisenhauer reviewed the then-available record and opined that Plaintiff was moderately limited in her abilities to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace; and

---

[82] AR 1603.

[83] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[84] It is possible that Renee Eisenhauer, PhD, who issued the June 2020 reviewing opinion is a different individual than R. Renee Eisenhauer, PhD, who issued the November 2021 reviewing opinion. Neither party discussed this issue. Regardless, the ALJ must evaluate each medical opinion against the relevant factors. The ALJ failed to do so here for Dr. Eisenhauer's June 2020 opinion.

mildly limited in her ability to adapt or manage herself.[85] She found that Plaintiff would be able to "understand and recall simple work tasks but would have difficulty with more complex tasks," was "able to sustain simple and repetitive work tasks for 2-hr increments of time [with] regular breaks during a normal 8-hr workday . . . [and] would do best working away from others," and was "able to interact appropriately with the public and coworkers when interactions are infrequent, routine, and superficial . . . [and] able to interact with a supervisor to ask and accept simple instructions."[86] Then on November 9, 2021, Dr. Eisenhauer issued an opinion for State disability purposes after reviewing Dr. Genthe's November 2021 opinion, Dr. Bowes' November 2018 opinion, and Dr. Cline's January 2017 opinion.[87] Dr. Eisenhauer agreed with Dr. Genthe's opinion that Plaintiff's abilities to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms were markedly limited.

As mentioned above, the ALJ did not specify how much weight was given to Dr. Eisenhauer's initial June 2020 opinion but did craft an RFC fairly consistent therewith. As to Dr. Eisenhauer's November 2021, the ALJ gave it "no weight." In

---

[85] AR 861–76.

[86] AR 861–76.

[87] AR 2176–2207.

1    doing so, the ALJ did not mention that Dr. Eisenhauer authored this opinion,

2    instead the ALJ merely referred to it as a "DSHS reviewer opinion."[88] The ALJ

3    explained he gave no weight to the "DSHS reviewer opinion" "for the same reasons

4    no weight is given to the examiner's opinion[]" by Dr. Genthe.[89]

5          The ALJ consequentially erred by not discussing why Dr. Eisenhauer's

6    initial less restrictive opined limitations should be given more weight than the

7    subsequently authored more restrictive opined limitations, which were given no

8    weight.[90] Moreover, as is discussed below, the reasons given by the ALJ for

9    discounting Dr. Eisenhauer's November 2021 opinion are not specific and

10   legitimate reasons supported by substantial evidence.

11         3.    <u>Psychological evaluations and opinions resulting therefrom</u>

12               a.    <u>*Dr. Zhang*</u>

13         In July 2016, Dr. Zhang conducted a psychological evaluation, which

14   included reviewing the disability report and provided medical records, a clinical

---

[88] AR 1614.

[89] *Id.*

[90] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion).

DISPOSITIVE ORDER - 25

interview, and a mental status examination.[91] During the clinical interview, Plaintiff shared that she was sexually abused as a child, is divorced, has few friends, and socializes occasionally. Dr. Zhang noted that Plaintiff's grooming and hygiene were fair, she was reasonably cooperative and orientated, her mood was mildly anxious and depressed with constricted affect, her speech was clear, she was able to do simple calculations, she had difficulty with abstract thinking, and she showed fair judgment but poor insight. Dr. Zhang diagnosed Plaintiff with dependent personality disorder, including poor coping skills, and her prognosis was guarded. He opined that Plaintiff had moderate limitations with understanding, remembering, and carrying out detailed and complex instructions; maintaining consistent attendance and performing routine work duties; performing work without special or additional supervision; and responding appropriately to usual work situations and to changes in a routine work setting. He opined that Plaintiff was not capable of managing funds independently.

The ALJ gave Dr. Zhang's opinion no weight because it was not supported by the "limited review of the records with single examination,",  was not well-explained or defined, and was inconsistent with Plaintiff's mental-health treatment and medication compliance and lack of psychiatric care.[92] Because Dr. Zhang's

---

[91] AR 417–21. Dr. Zhang's report does not specify what the "medical records as provided" were that he reviewed. AR 417.

[92] AR 1615.

opined moderate limitations were inconsistent with Jay Toews, EdD's testifying

opinion, the ALJ was required to give specific and legitimate reasons, supported by

substantial evidence, to reject the opinion.[93]

Inconsistency with the mental-status observations by the evaluator or with

the longitudinal record, as well as lack of support from the record, are legitimate

reasons for an ALJ to discount a medical opinion.[94] The ALJ must explain why the

observations and findings in the evaluation report and other aspects of the record

are inconsistent with the opined limitations.[95]

Based on a fair and full review of the longitudinal medical record, the ALJ's

decision to give no weight to Dr. Zhang's opined moderate limitations is not

supported by such relevant evidence that a reasonable mind would accept the no-

weight decision as adequate. The ALJ relied too heavily on the normal mental-

health observations during physical-health appointments without considering that

---

[93] *See Bayliss*, 427 F.3d 1216.

[94] 20 C.F.R. § 416.920c(b)(2), (c). *See Buck*, 869 F.3d at 1050; *Lingenfelter*, 504 F.3d

at 1042 (recognizing that the ALJ is to consider the consistency of the medical

opinion with the record as a whole and assess the amount of relevant evidence that

supports the opinion).

[95] *See Burnett v. Bowen*, 930 F.3d 731, 736 (7th Cir. 1987); *Humane Soc. of U.S. v.*

*Locke*, 626 F.3d 1040, 1054 (9th Cir. 2010 (requiring an agency to provide an

explanation that "enables meaningful judicial review").

Plaintiff often appeared in mild pain, as depressed, or as anxious during therapy and medication-management appointments and that all of the evaluating mental-health professionals opined that Plaintiff would have difficulty maintaining consistent attendance and performing work tasks consistently within a schedule.[96] Moreover, although the ALJ appropriately considered that Dr. Zhang reviewed review prior medical records, the ALJ should not have discounted Dr. Zhang's report on the grounds that he only had a "limited review of records with single examination" because under the then-applicable regulation more weight, not less,

---

[96] *See, e.g.*, the evaluating psychological opinions: AR 468–73, 434–38, 1085–89, 2168–75. *See, e.g.*, a sampling of mental-health and pain-related treatment records: AR 415 (July 5, 2016: inappropriate mood and affect and appeared depressed); AR 603 (Jan. 12, 2017: depressed affect); AR 531 (Apr. 13, 2017: tearful during session); AR 522–23 (Aug. 9, 2017: anxious mood, attention and concentration were impaired as exhibited by distracted, tangential thought form, and fair insight and judgment); AR 511–12 (Nov. 14, 2017: attention and concentration were impaired as exhibited by scattered, thought form tangential, and fair insight and judgment); AR 1370 (July 19, 2019: sad mood); AR 1302 (Feb. 19, 2020: sad and worried); AR 1432 (Feb. 9, 2021: anxious, sad, tearful, and fair judgment and insight). *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

was to be given to opinions from a "source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]."[97] Plus, while an evaluating opinion, which was based on information or observations that were not consistent with the longitudinal record, may be appropriately discounted; here, a full review of the longitudinal record reflects that Dr. Zhang's observations and findings were largely consistent with the waxing and waning mental-health symptoms observed by Plaintiff's mental-health treating providers and evaluators.

Finally, the ALJ discounted Dr. Zhang's opinion because Plaintiff had "inconsistent mental health treatment and lack of psychiatric care with inconsistent use of psychotropic medication."[98] The longitudinal record shows that a variety of medications were tried, some of which caused side effects, and that notwithstanding such medication attempts she still experienced sadness, anxiety, and panic attacks.[99] For about two years from mid-2018–2020, Plaintiff's medical

---

[97] 20 C.F.R. § 416.927(c)(1).

[98] AR 1615.

[99] *See, e.g.,* AR 510, 514, 518, 522, 526, 653, 1251, 1259, 1427, 1430–31, 2038, 2049, 2058, 2061, 2664. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of

care was largely for pain management rather than mental-health appointments; however, the ALJ failed to consider the suspected interplay between Plaintiff's pain and her mental-health impairments.[100] In addition, the ALJ did not discuss how Plaintiff's mental-health impairments, including anxiety about leaving her house, affected her course of treatment, particularly prior to the increased availability of healthcare by telephone or video during and after the national pandemic in 2020.[101]

On this record, the ALJ erred by giving no weight to Dr. Zhang's opinion.

*b.*    *Dr. Cline and Dr. Carstens*

---

improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

[100] *See, e.g.*, AR 454–57, 470, 1087. *See Lester v. Chater*, 81 F.3d 821, 829–30 (9th Cir. 1995) (superseded by statute on other grounds) (noting that, for claimant with chronic pain syndrome and affective disorder, the consequences of the physical and mental impairments were inextricably linked and the Commissioner "erred as a matter of law in isolating the effects of [the claimant's] physical impairment from the effects of his mental impairment").

[101] *See, e.g.*, AR 2109 (setting a goal in therapy of leaving her room for 5 minutes daily to talk with her family).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Six months after Dr. Zhang's evaluation, Plaintiff was evaluated by Dr. Cline.[102] This psychological evaluation again included a clinical interview and mental status examination. Plaintiff shared that she isolates by staying in her room, feels depressed every day, is preoccupied with fears of being abandoned in relationships, and that her physical pain increased following a car accident years prior.[103] Dr. Cline stated, "she endorses many traits consistent with a diagnosis of borderline personality disorder, and this may be the best diagnosis for her at this time, though she appears to have had significant episodes of depression in the past these may have been strongly influenced by her substance use."[104] Dr. Cline observed that Plaintiff was casually attired and groomed, her speech was within normal limits, she was cooperative and orientated with fair eye contact, her mood was described as "tired, ho-hum," and her affect was slightly flattened. Dr. Cline noted that Plaintiff's fund of knowledge and thought process/content were not within normal limits, her perception was not within normal limits as she sometimes hears voices, her ability to think abstractly was limited at best, her primary thinking pattern was concrete, her insight appeared minimal, and her judgment was basic. The Rey testing score was 14, which indicated an above average level of effort and cooperation and decreased the likelihood of malingering.

---

[102] AR 468–73.

[103] AR 468; *see also* AR 576.

[104] AR 468.

Her Becks Anxiety Inventory score of 40 indicated marked level of anxiety, and her score of 54 on the Becks Depression Inventory-II fell in the uninterpretable range, as scores above 50 are generally viewed as past the cut-off for severe symptoms of depression, indicating either exaggeration or a cry for help. Dr. Cline concluded, "Given her apparent personality disorder and the lack of malingering on the Rey, the latter [a cry for help] appears to be the best interpretation at this time."[105] In addition to borderline personality disorder, Dr. Cline diagnosed Plaintiff with PTSD, unspecified anxiety disorder with features of agoraphobia and panic disorder (rule-out substance induced/exacerbated), unspecified depressive disorder (rule-out MDD in remission vs. substance induced/exacerbated), rule-out somatic symptom disorder, and substance abuse disorders in remission except for marijuana use. He opined that Plaintiff was markedly limited in her abilities to maintain appropriate behavior in a work setting and set realistic goals and plan independently; and moderately limited in her abilities to make simple work-related decisions, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision.

---

[105] AR 470.

1

2

3

4

5

     Dr. Carstens reviewed Dr. Cline's opinion, along with a December 15, 2016 treatment note.[106] Dr. Carstens agreed with Dr. Cline's functional limitations but recommended a duration of 18-24 months for the number of months the impairments were expected to persist, instead of Dr. Cline's opined duration of 9-12 months.

6

7

8

9

10

11

12

     The ALJ gave no weight to Dr. Cline's opinion because 1) Dr. Cline reviewed no records, 2) he did not explain why the profound limitations were assessed, 3) he was essentially finding that Plaintiff could not work which is a legal conclusion, 4) his extreme limitations were inconsistent with his mental-status examination findings, 5) his moderate and marked limitations were inconsistent with most treatment notes, and 6) the severe limitations were inconsistent with Plaintiff's ability to "initiate her own treatment, drive a vehicle, care for her grandson, and

13

14

_____

15

16

17

18

19

20

21

22

23

[106] AR 474–75. The December 2016 treatment record was authored by ARNP Beth McManis, who became one of Plaintiff's treating providers. The December appointment was to establish care with ARNP McManis after Plaintiff had moved. ARNP McManis noted that she observed Plaintiff with a limping and shuffling gait, with decreased sensation to pinprick in legs, and teariness. AR 463–66. ARNP McManis prescribed medication to help Plaintiff sleep and referred Plaintiff to a therapist for her depression and anxiety and to a pain management provider for her pain.

apply coping skills."[107] Likewise, the ALJ gave no weight to Dr. Carstens' medical opinion because it was "based largely upon the cursory examination report [of Dr. Cline's] for the purpose of support eligibility for state disability assistance."[108]

Because Dr. Cline's and Dr. Carstens' opined limitations were inconsistent with Dr. Toews' reviewing opinion, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject their opinions.[109]

First, as is explained above, simply because Dr. Cline did not review records as part of his psychological examination is not a basis for the ALJ to reject the opinion, particularly given that Dr. Cline's observations and opined limitations were generally consistent with the other psychological examinations.

Second, similar to Dr. Zhang, Dr. Cline heard from Plaintiff as to her background and her daily activities; he considered Plaintiff's high BAI scores; he observed that Plaintiff's affect was slightly flattened; and he found her ability to think abstractly was limited, her thinking pattern concrete, and insight minimal. Instead of looking at these observations and findings by Dr. Cline, the ALJ found that "Dr. Cline did not provide specific rationale to explain" his assessments. This finding is not supported by substantial evidence. Although an ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative

---

[107] AR 1613.

[108] AR 1614.

[109] *See Bayliss*, 427 F.3d 1216.

1    evidence that bears on the disability analysis."[110] Here, the ALJ ignored significant

2    probative evidence supporting Dr. Cline's opined limitations.

3         Third, it was not legitimate for the ALJ to discount Dr. Cline's opinion on

4    the grounds that it was essentially a legal conclusion that Plaintiff cannot work.

5    One's ability to perform the mental demands of work activities including

6    maintaining appropriate workplace behavior, concentration, persistence, or pace

7    must be considered by the ALJ—and a medical source's opinion on these abilities is

8    relevant evidence that the ALJ must consider.[111] Dr. Cline's evaluation and opined

9    limitations offer more than simply a statement as to whether Plaintiff was able to

10   perform regular or continuing work.[112] This was not an adequate basis to discount

11   Dr. Cline's opined limitations.

12        Finally, although a ALJ may discount a medical opinion that is inconsistent

13   with the claimant's level of activity,[113] the ALJ's finding that Dr. Cline's opined

14   limitations were inconsistent with Plaintiff's ability to "initiate her own treatment,

15

16   [110] *Kilpatrick*, 35 F.4th at 1193.

17   [111] 20 C.F.R. §§ 416.913(a)(2)(i)(B), 416.927(a)(1).

18   [112] 20 C.F.R. § 416.920b(c)(3).

19   [113] *Id.* § 416.920c(c)(2) (comparing the medical opinion with evidence from

20   nonmedical sources); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.

21   2001) (finding claimant ability to care for two young children and maintaining a

22   household inconsistent with the medical source's opinion).

23

drive a vehicle, care for her grandson, and apply coping skills" is not supported by substantial evidence. On this record, a reasonable mind would not consider Plaintiff's actions in these areas as inconsistent with Dr. Cline's opined limitations or as activities that are "easily transferable to what may be the more grueling environment of the workplace."[114] The information relayed by Plaintiff during the psychological evaluations and to her treating providers reflect that she spent the majority of her days isolated in her room.[115] In fact, one goal of therapy was for her to spend five minutes outside of her room and interact with her family inside the home; another goal was that she appear for her next appointment in person in

---

[114] *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[115] *See, e.g.*, AR 1073 ("I isolate myself, I don't want to be around anyone, I cry, I get angry, it depends on the day."); AR 1422 ("always laying down in her room"); AR 1430 ("will walk into another room so her grandson does not see her having difficulty with PTSD/anxiety sx"); AR 2104 ("Notes very difficult conversation with dtr in law and son in which they are coaxing her to come out of room more—finds it frustrating that they do not want to let her stay in her room all the time where she feels safest").

order to "expand where your brain says is 'safe, if stressful.'"[116] Notwithstanding

this isolation, she was able to contact providers by telephone or by email.[117] In

addition, the statements about Plaintiff caring for her grandson must be

interpreted in context.[118] Although there is a reference that she will be doing some

of the care for her grandson when her son starts school,[119] there is no indication in

the record that this occurred or that Plaintiff provided any care to the grandson

that was of sufficient duration or type to be inconsistent with the opined

limitations. Instead, the references to her grandson are that she liked to play with

him and get him to talk. Finally, on this record, that Plaintiff has a driver's license

and used to drive to appointments or errands is not an activity that it is

---

[116] AR 2110, 2544.

[117] *See, e.g.*, AR 2821–22.

[118] *See, e.g.*, AR 2109–10 ("Notice it can be challenging for me to spend so much time with my grandson, but it's important to me and I'm proud of myself for doing it" but also mentioning that she "[h]as been pushing herself a little bit to leave her room each day to talk to her son and daughter in law—notes that after 5 or 6 minutes it becomes very anxiety provoking"); AR 2111 (reporting that she lives with her son, daughter-in-law, and 3½-year-old grandson, that she "loves working with Mathias to get him to talk" and that she tries to play with her grandson but it is difficult due to her pain).

[119] AR 1422.

1    inconsistent with the opined limitations; moreover, Plaintiff testified that she

2    stopped driving herself and relied on others.[120]

3         As to Dr. Carstens' opinion, the ALJ no weight to Dr. Carstens' opinion

4    because it was based on Dr. Cline's opinion and issued for the purpose of

5    supporting eligibility for state disability assistance. As is discussed above, the ALJ

6    failed to give specific and legitimate reasons, supported by substantial evidence, for

7    giving no weight to Dr. Cline's opinion. In addition, Washington's assistance

8    requirements rely on the Social Security five-step analytic framework; therefore,

9    that the opinion was issued for State assistance purposes is not a legitimate reason

10   to give no weight to Dr. Carstens' opinion.[121]

11        On this record, the ALJ erred by giving no weight to Dr. Cline's and

12   Dr. Carstens' opinions.

13        4.    Dr. Bowes

14        Almost two years after Dr. Cline's evaluation, Dr. Bowes evaluated Plaintiff

15   in November 2018, including conducting a clinical interview, a mental status

16

17   ──────────────────

     [120] AR 1644; *see also* AR 1963, 2821, 2834.

18   [121] *See* 20 C.F.R. § 416.927(b), 416.913(a)(2) (requiring an ALJ to evaluate each

19   medical source opinion and consider the supporting evidence underlying the

20   decision); WAC 182-512-0050; *Holbrook v. Berryhill,* No. 15-35552, 696 F. App'x

21   846 (9th Cir. Aug. 30, 2017) (unpublished opinion) (reversing the ALJ for failing to

22   adequately consider a Washington DSHS decision finding the claimant disabled).

23

examination, and testing.[122] During the clinical interview, Plaintiff shared that she was neglected and sexually abused as a child, married three times, has been in abusive relationships, lives with her adult son, has occasional nightmares and intrusive memories, experiences hypervigilance, has no energy, is always tired, has chronic pain, and spends most of her time in bed trying to sleep. The test results were: Trails A, 17; Trails B, 57; Rey-1, 15; Beck Depression Inventory 46 (severe); and Becks Anxiety Inventory 42 (severe).[123] Dr. Bowes noted that Plaintiff's basic grooming was marginal, she was cooperative but had low energy with dysphoric mood and blunted affect, her thought process was logical, and she was orientated with normal fund of knowledge, concentration, and insight. Dr. Bowes diagnosed Plaintiff with persistent depressive disorder (chronic major depression, severe), PTSD, and rule-out somatic disorder. She assessed that Plaintiff was severely limited in her abilities to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and markedly limited in her abilities to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, complete a normal workday and workweek without interruptions from psychologically based symptoms, and understand, remember, and persist in tasks by following detailed instructions. She also opined that Plaintiff was moderately

---

[122] AR 1085–96.

[123] AR 1086–87.

1    limited in her abilities to learn new tasks, perform routine tasks without special

2    supervision, adapt to changes in a routine work setting, ask simple questions or

3    request assistance, and set realistic goals and plan independently.

4         The ALJ gave no weight to Dr. Bowes' opinion because Dr. Bowes 1)

5    reviewed no records, 2) she did not explain her opined severe limitations, 3) her

6    opinion was a legal conclusion that Plaintiff could not work, 4) the opined

7    limitations were internally inconsistent with the normal mental status findings, 5)

8    the opined limitations were inconsistent with the medical record, and 6) the

9    opinion was inconsistent with Plaintiff's ability to "initiate her own treatment,

10   drive a vehicle, care for her grandson, and apply coping skills."[124] Because Dr.

11   Bowes' opined moderate limitations were inconsistent with Dr. Toews' testifying

12   opinion, the ALJ was required to give specific and legitimate reasons, supported by

13   substantial evidence, to reject the opinion.[125] The ALJ failed to do so.

14        First, as is explained above, the relied-on activities do not serve as

15   substantial evidence to discount the opined limitations, Dr. Bowes' opined

16   limitations were not "legal conclusions" that could be discounted but instead were

17   medical-source evidence that the ALJ was required to evaluate, and the ALJ was

18   generally required to give more weight, not less weight, to a psychological

19   examination than to a reviewing opinion. Therefore, these reasons were not specific

20

21   [124] AR 1614.

22
     [125] *See Bayliss*, 427 F.3d 1216.
23

1  and legitimate reasons, supported by substantial evidence, to give no weight to Dr.

2  Bowes' opinion,

3     Second, the ALJ's finding that Dr. Bowes did not explain her assessments is

4  not supported by substantial evidence. Dr. Bowes observed Plaintiff as dysphoric

5  and with marginal grooming, a blunted affect, low energy, and high scores on the

6  Beck Depression and Anxiety Inventories. Likewise, the ALJ's finding that

7  Dr. Bowes' opinion is internally inconsistent with the normal mental status

8  findings is not supported by substantial evidence. Finally, as is explained above,

9  the ALJ failed to consider fairly and fully that the each of the psychological

10 evaluations concluded that Plaintiff was at least moderately limited in maintaining

11 attendance and sustaining work performance, or that the treatment notes from

12 behavioral health, therapy, and pain management appointments generally

13 reflected that Plaintiff presented with an abnormal affect or mood or in mild pain.

14     For these reasons, the ALJ's finding that Dr. Bowes' opinion was entitled to

15 no weight is not supported by substantial evidence.

16     5.   <u>Dr. Genthe and Dr. Eisenhauer</u>

17     In November 2021, three years after Dr. Bowes' psychological evaluation,

18 Dr. Genthe conducted a psychological evaluation, which included a clinical

19 interview and mental status examination.[126] Plaintiff relayed that she lives with

20 her son, relies on others for transportation, can get along with others on a

21

22 _____

23 [126] AR 2168–75.

DISPOSITIVE ORDER - 41

superficial basis but has difficulties trusting people, spends her day watching TV, and can care for her hygiene needs, prepare her own meals, and schedule her own appointments. Dr. Genthe diagnosed her with major depressive disorder with anxious distress, panic disorder, PTSD, and other specified personality disorder (rule-out). Dr. Genthe opined that Plaintiff was moderately limited in her abilities to learn new tasks; adapt to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; ask simple questions or request assistance; set realistic goals and plan independently; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and understand, remember, and persist in tasks by following detailed instructions. Dr. Genthe opined that Plaintiff was markedly limited in her abilities to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and workweek without interruptions from psychologically based symptoms. Dr. Genthe stated that "[d]espite having taken prescribed medication for some time, her current regimen does not appear to be adequately targeting interfering symptoms, which are likely to interfere with her ability to initiate or maintain future employment."[127]

_____

[127] AR 2172.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Dr. Eisenhauer reviewed Dr. Genthe's report, as well as the reports from Dr. Bowes and Dr. Cline.[128] She agreed with Dr. Genthe's diagnoses and the opined functional limitations.

The ALJ gave little weight to Dr. Genthe's opinion because 1) it was inconsistent with his opinion that vocational training would minimize or eliminate barriers, 2) Plaintiff's symptoms could be minimized by more targeted medication, 3) Dr. Genthe's examination was limited to the phone with no review of records, and 4) Plaintiff's memory testing and judgment findings are not consistent with the treating observations of record.[129] The ALJ gave no weight to Dr. Eisenhauer's November 2021 opinion because it was based largely on Dr. Genthe's "cursory examination report[] for the purpose of support eligibility for state disability assistance."[130]

Because Dr. Bowes' opined moderate limitations were inconsistent with Dr. Toews' testifying opinion, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.[131] The ALJ failed to do so.

---

[128] AR 2206–07.

[129] AR 1615–16.

[130] AR 1614.

[131] *See Bayliss*, 427 F.3d 1216.

1    First, as is explained above, the ALJ failed to consider fairly and fully the

2    consistency between Plaintiff's test results during the psychological evaluations

3    and the observations of the evaluators against the longitudinal mental-health and

4    pain-management medical record. Second, it was error for the ALJ to discount

5    Dr. Genthe's evaluation for being by telephone and for not including review of

6    records because 1) the then-applicable regulation generally required giving more

7    weight, not less weight, to examination opinions than to reviewing opinions, and 2)

8    the ALJ did not consider that Dr. Eisenhauer, who had reviewed the record in June

9    2020, also reviewed Dr. Genthe's report and found it supported by Dr. Clines' and

10    Dr. Bowes' reports.

11    Third, the ALJ also should not have discounted Dr. Genthe's opinion on the

12    grounds that he suggested that Plaintiff's current medications were not adequately

13    targeting interfering symptoms without considering Dr. Genthe's statement in full

14    context and that the medical record reflected that providers had worked with

15    Plaintiff for several years in an attempt to find the best medication to minimize her

16    mental-health symptoms, pain, and medication side-effects.[132] Dr. Genthe stated:

17    *Despite having taken prescribed medication for some time*, her current
18    regimen does not appear to be adequately targeting interfering
      symptoms, which are likely to interfere with her ability to initiate or
      maintain future employment. It is recommended that she continue
19    working with her treatment providers in an effort to fine-tune her
      medication regimen for effectiveness. Additionally, continued
20

21    _____

22    [132] *See, e.g.*, AR 463–67; 653–57, 673–78, 517, 522–26, 1130, 1387, 1355, 2031, 2111–
23    13, 2498.

1
2
involvement in mental health counseling is recommended to address
various psychosocial stressors that contribute to her current level of
emotional distress.[133]

3
4
Dr. Genthe also recommended that Plaintiff needed a period of at least twelve
months to address her treatment needs "at least moderately well."[134]

5
6
7
Finally, the ALJ fails to explain why Dr. Genthe's opinion that vocational
training or services would minimize or eliminate barriers to employment was
inconsistent with Dr. Genthe's opined limitations.

8
9
10
11
12
13
14
15
16
17
As to Dr. Eisenhauer's November 2021 opinion agreeing with Dr. Genthe's
opinion, the ALJ's rationale for giving this opinion no weight is not supported by
specific and legitimate reasons, supported by substantial evidence. First, the ALJ's
finding that Dr. Eisenhauer's opinion was based "largely upon the cursory
examination report[]"[135] of Dr. Genthe is not supported by substantial evidence, as
Dr. Eisenhauer also reviewed Dr. Clines' and Dr. Bowes' psychological reports.
Moreover, as is discussed above, the ALJ failed to consider that Dr. Eisenhauer
(likely) reviewed the record in June 2020 in connection with her prior opinion.
Second, as explained above, that Dr. Eisenhauer issued her opinion for the purpose
of state disability assistance is not a legitimate reason to give no weight to it.

18
19
20
21
22
23

[133] AR 2172 (emphasis added).

[134] *Id.*

[135] AR 1614.

1

6.    <u>Summary</u>

2      The ALJ erred in his analysis of the mental-health opinions. Contrary to the

3    Commissioner's argument otherwise, simply because the record contains several

4    normal mental-health findings does not equate to a finding that the ALJ's

5    nondisability decision is supported by substantial evidence. The ALJ has a duty to

6    evaluate the evidence of record fully and fairly. By relying too heavily on the

7    normal mental-health findings, the ALJ failed to consider how Plaintiff's mental-

8    health impairments and pain impact her mood and energy and abilities to

9    maintain attendance and complete a workday/week. This error in turn effected the

10    ALJ's assessment of the evaluating psychological opinions. This error was

11    consequential as the vocational expert testified that one's work absences cannot

12    exceed 6–8 days a year.[136]

13    **C.    Other Challenges**

14      Because of the ALJ's above-discussed consequential errors, the Court need

15    not analyze Plaintiff's remaining claims pertaining to other medical opinions or the

16    ALJ's discounting of Plaintiff's symptom reports.

17    **D.    Remand: award benefits.**

18      Plaintiff asks for an award of benefits. Although remand for further

19    administrative proceedings is the usual course when a harmful error occurs in the

20

21

22    ────────────────

23    [136] AR 1654.

administrative proceeding, this is a rare circumstance where an award of benefits is appropriate.[137]

First, for the third time, an ALJ failed to provide legally sufficient reasons supported by substantial evidence for the disability denial.

Second, further administrative proceedings will offer no benefit—the record is fully developed.[138] This record supports applying the credit-as-true rule as a prophylactic measure.[139] Plaintiff filed her initial claim in March 2016. Not only have eight years passed since Plaintiff's application, but now for the third time, the ALJ failed to consider fully and fairly the longitudinal medical record, failed to provide specific and legitimate reasons for why the more limiting medical opinions were discounted, and failed to include limitations related to COPD or Plaintiff's lower leg impairments—limitations that likely would have precluded a light-work RFC. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."[140]

Third, when fully crediting the evaluating medical opinions pertaining to Plaintiff's mental health, as well as the treating medical opinions, the vocational

---

[137] *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[138] *See id.*

[139] *See Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009).

[140] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

expert's testimony requires a finding that Plaintiff is disabled.[141] Plaintiff is unable
to perform and sustain fulltime work.

An award of benefits is warranted.

### IV.    Conclusion

Plaintiff establishes the ALJ erred and that an award of benefits—rather
than a third remand for a fourth re-evaluation—is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is
REMANDED to the Commissioner of Social Security for
immediate calculation and award of benefits**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and
12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and
provide copies to all counsel.

DATED this 30th day of July 2024.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[141] AR 1654–60. In addition, if Plaintiff is limited to sedentary work, once she
turned 50, she qualified for disability under the Grids.